IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:13-CV-81-FL

| | |
|---|---|
| KIMBERLY HEATH, )<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-17, DE-20] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Kimberly Heath ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

**STATEMENT OF THE CASE**

Claimant protectively filed an application for a period of disability and DIB on June 19, 2010, alleging disability beginning January 7, 2010. (R. 12.) Her claim was denied initially and upon reconsideration. (R. 12.) A hearing before the Administrative Law Judge ("ALJ") was held on September 7, 2011 (R. 26), at which Claimant was represented by counsel and a vocational

expert ("VE") appeared and testified. (R. 28, 43–46.) On October 24, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 21.) Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 7) and submitted additional evidence as part of her request (R. 5, 610–54.) After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on February 14, 2013. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (2012). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the

2

relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id*. At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy which the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c) (2013). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to give controlling weight to Dr. Kevin McKnight's medical evaluation of Claimant; and (2) improper

3

assessment of Claimant's residual functional capacity ("RFC"). (Pl.'s Mem. Supp. Mot. J. Pleadings ("Pl.'s Mem.") [DE-18] at 3.)

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 14). Next, the ALJ determined Claimant had the following severe impairments: seronegative nonerosive rheumatoid arthritis, hypertension, fibromyalgia, obesity, osteoarthritis, and depression. (*Id.*) The ALJ also found Claimant had nonsevere impairments of irritable bowel syndrome and that she was a recovering alcoholic. (R. 14–15). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild to moderate limitations in her activities of daily living, social functioning, and concentration, persistence, and pace with no episodes of decompensation. (R. 15.)

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work subject to the following limitations: (1) lifting, pushing, or pulling ten pounds regularly and twenty pounds occasionally; (2) sitting, standing, and walking for six hours in a typical eight-hour day; (3) occasional climbing, stooping, crouching; (4) avoiding concentrated exposure to hazards and humidity; and (5) occasional balancing. (R. 16.) However, the ALJ did determine that Claimant could perform work involving frequent handling and fingering. (R. 16.) The ALJ also identified the following non-exertional limitations: (1)

4

simple, routine, repetitive tasks with routine changes; (2) occasional contact with the public; and (3) non-production-based work environment. (*Id.*) In making this assessment, the ALJ found Claimant's statements about her limitations not credible. (R. 18.)

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a bookkeeper. (R. 19.) Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies. (R. 19–20).

## II. Claimant's Testimony

At the time of Claimant's administrative hearing, Claimant was 47 years old, a high school graduate, and unemployed. (R. 30–33). Claimant was last employed with Lilly International as an account manager for approximately two years, where her duties included bookkeeping. (R. 32, 245.) Claimant's past work experience also includes being a substitute teacher in Craven County, a sales representative for Merle Norman, and a payroll administrator for Craven Electric Supply. (R. 32–33.)

Claimant testified to several medical conditions that had led her to file her claim. Claimant complained of pain in her knees, ankles, shoulder, neck, back, and tailbone due to fibromyalgia and arthritis. (R. 33–34.) Claimant takes medications to help with the pain and, in the past, has had steroid injections but ceased this pain treatment method due to the side effects. (R. 34.) Weather affects her level of pain, and she can do very little bending, stooping, or squatting. (R. 41.) Claimant has irritable bowel syndrome, which is exacerbated by anxiety and can sometimes be controlled with diet and over-the-counter medication. (R. 34–35.)

5

Additionally, Claimant takes medication for high blood pressure and depression, and she is a recovering alcoholic. (R. 35–36.)

Claimant testified that it is difficult for her to be in large crowds, and she can only sit for thirty to forty-five minutes at a time and stand for a period of ten minutes before having to sit down. (R. 38–39.) Claimant can lift ten to fifteen pounds at most. In a typical day, Claimant wakes up around 6:00 a.m. because it is difficult for her to sleep. (R. 39.) She gets ready around 10:00 or 11:00 a.m. and occasionally goes to an AA meeting or runs errands. (*Id.*) Claimant does the laundry for the household, as well as periodic sweeping and cleaning for about ten minutes at a time. (*Id.*) Claimant rarely does the cooking. (R. 40.) Throughout the day, Claimant enjoys watching television, listening to music, reading, and playing cards on the computer. (*Id.*) Claimant experiences crying spells a few times a month and on three or four occasions each month does not get dressed during the day. (R. 41.)

### III. Vocational Expert's Testimony

Stephen Carpenter testified as a VE at the administrative hearing. (R. 43–46.) After the VE's testimony regarding Claimant's past work experience (R. 43), the ALJ posed the following hypothetical question:

> Assume that this is an individual who is 47 years old, thus is considered to be a younger individual, with a high school education, past work as a bookkeeper. Assume further this individual has a residual functional capacity to perform light work, lifting up to 20 pounds occasionally, up to 10 pounds frequently, sitting/standing up to six hours in an eight-hour day, with occasional climbing, crouching, stooping. They [sic] should avoid concentrated exposure to hazards and humidity, frequent handling and fingering, occasional balancing. Work should be unskilled, simple, routine, repetitive in nature, routine changes in the work environment, occasional contact with the public, should be a non-production oriented type job. Would they [sic] be able to do the past work?

6

(R. 44.). The VE responded in the negative. (*Id.*) The ALJ asked if there was other work the hypothetical claimant could perform. (*Id.*) The VE responded in the affirmative and noted that such a claimant could perform the following jobs: photocopying-machine operator (DOT 207.685-014, light work, unskilled), mail clerk (DOT 209.687-026, unskilled), officer helper (DOT 239.567-010, light work, unskilled). (R. 44–45.) The ALJ then added a sit/stand option every thirty to forty-five minutes, and the VE testified that the previously listed jobs were consistent with the option. (R. 45).

The VE concluded that all jobs existed in significant numbers in both the state and national economies. (R. 44–45.)

## DISCUSSION

### I. Dr. Kevin McKnight's Medical Opinion

Claimant contends that the ALJ erred in failing to give controlling weight to Dr. Kevin McKnight's opinion that Claimant is incapable of performing even sedentary work. (Pl.'s Mem. at 11.) The undersigned disagrees.

Generally, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig v. Chater*, 76 F.3d 585, 590 (1996))

7

(internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.*

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given the treating physician's opinion. In making this determination, the ALJ should consider the following factors: (1) the length of treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the field in which the opinion is rendered. 20 C.F.R. § 404.1527(c)(2)–(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

In the instant case, the ALJ reviewed Claimant's medical records produced by Dr. McKnight. (R. 17–19.) The records show Dr. McKnight performed physical examinations of Claimant in June and July of 2010. (R. 17.) Those examinations revealed "no edema or active synovitis with good range of motion in the wrists, elbows and shoulders and an ability to ambulate well with diffuse tender points." (R. 17.) The ALJ also discussed Dr. McKnight's assessment of Claimant on August 9, 2010. (R. 18–19.) At this appointment, Dr. McKnight filled out a Medical Source Statement of Ability to do Work-Related Activities form indicating that Claimant was limited to lifting less than ten pounds, standing or walking less than two hours in an eight-hour workday, sitting less than six hours in an eight-hour workday, only occasional balancing, and never kneeling, crawling, or stooping. (R. 377–78.) Dr. McKnight also noted the following environmental limitations caused by Claimant's impairment: extreme temperatures, noise, dust, vibration, humidity/wetness, hazards, and fumes, odors, chemicals, and gases. (R. 380.) In discussing the descriptions of Claimant's physical condition, the ALJ noted that Dr. McKnight's

progress notes from June and July 2010, which indicate Claimant had a good range of motion and could ambulate well, contradict the findings in Dr. McKnight's assessment. (R. 19). The ALJ also noted the limited number of times Dr. McKnight examined Claimant. (R. 19.)

Further, the ALJ discussed opinions from Dr. Helen E. Harmon and Dr. John F. McQuade, which contradicted Dr. McKnight's findings. (R. 17.) In March 2010, Dr. Harmon reported that Claimant's "rheumatoid arthritis was in remission with negative repeat x-rays of the hands and feet in 2009." (R. 17.) In June and July 2011, within three months of the administrative hearing before the ALJ, Dr. McQuade indicated that Claimant's rheumatoid arthritis and fibromyalgia were stable. (R. 17). The ALJ tied her analysis together, stating:

> The . . . evidence indicates although the claimant has arthritis and fibromyalgia, her limited and conservative [sic] suggest that these conditions are not debilitating. Physical examinations and diagnostic testing have been normal. In addition, [Dr. McQuade] reported that that [sic] from an arthritis and fibromyalgia standpoint, her condition was stable.

(R. 17.)

Taking into account the entire record, the ALJ did assign some weight to Dr. McKnight's opinion. This is evident in the fact that the ALJ limited Claimant to light work and applied numerous additional limitations to take into account Claimant's severe impairments. After looking at the limited length of the treatment relationship, the fact that Dr. McKnight's notes contradict the work assessment he performed, and the fact that Dr. McKnight's findings are inconsistent with the rest of the medical record, the ALJ appropriately weighed Dr. McKnight's opinions in making her RFC decision.

9

## II.　Residential Functional Capacity

Claimant asserts that the ALJ erred in finding that Claimant had the RFC to perform light work because the ALJ incorrectly determined that Claimant's statements were not credible. (Pl.'s Mem. at 12.) The undersigned disagrees.

Claimant contends that her testimony was credible and showed her inability to work due to her physical and mental impairments. In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594–95. Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p, 1996 WL 374186 (July 2, 1996).

In order to determine whether Claimant's medically determinable impairments could reasonably cause her alleged symptoms of pain and depression, the ALJ examined Claimant's statements and medical records. Based on the medically determined impairments, the ALJ determined that Claimant's impairments could reasonably cause her symptoms of pain. As noted by the ALJ, these medically determined impairments included both the severe impairments of rheumatoid arthritis, fibromyalgia, hypertension, obesity, osteoarthritis, and depression and the nonsevere impairments of irritable bowel syndrome and recovering from alcoholism.

The ALJ then noted the inconsistencies within Claimant's own testimony, as well as the inconsistencies between Claimant's statements and the medical records. Claimant testified to

10

debilitating symptoms related to her arthritis pain and her depression. (R. 18.) She complained of pain in her hips, hands, and other various joints due to her arthritis. (R. 18.) Claimant also stated that she has been on medication for anxiety and depression but that her symptoms have improved since she stopped using alcohol and started attending group therapy. (R. 18.) However, Claimant also indicated that she is able to keep up with chores around the house, run errands, and shop for necessities. (R. 18.) She can take care of the household finances, and she enjoys a limited social life. (R. 18.) Further, Claimant's medical records reveal that she had a full range of motion in her wrists, elbows, and shoulders. She could ambulate well, and she had normal musculoskeletal, neurological, and extremities evaluations. (R. 17.) From May until July 2010, Claimant was diagnosed with major depressive disorder described as being "mild" and "in partial remission." (R. 17, 403–07.) As recently as July 2011, Claimant had a normal mental status examination with no recommended changes in treatment. (R. 17.)

Due to the inconsistencies among Claimant's statements and between Claimant's statements and the medical record, the ALJ appropriately found that Claimant's statements were not credible to the extent those statements were inconsistent with the RFC. The ALJ properly exercised her discretion in determining Claimant's credibility and her determination of Claimant's RFC is amply supported by the evidence of record.

## CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that Claimant's Motion for Judgment on the Pleadings [DE-17] be DENIED, that Defendant's Motion for Judgment on the Pleadings [DE-20] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from date of service to file written objections.

Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 20th day of December 2013.

                                                          */s/ Kimberly A. Swank*
                                                          KIMBERLY A. SWANK
                                                          United States Magistrate Judge